Defendant Mylan Pharmaceuticals Inc. ("Mylan") respectfully submits this brief in support of its motion to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) and/or for failure to state a claim upon which relief can be granted under FED. R. CIV. P 12(b)(6).

## INTRODUCTION

This case for alleged patent infringement involves the cholesterol-lowering drug "rosuvastatin calcium" that AstraZeneca markets under the brand-name CRESTOR®. In their Amended Complaint, Plaintiffs allege that certain uses of rosuvastatin are claimed by the "method of treatment" patents-in-suit (U.S. Patent Nos. 6,858,618 ("the '618 patent") and 7,030,152 ("the '152 patent")). Importantly, however, the patents-in-suit admittedly do *not*—and indeed cannot—claim: (a) the rosuvastatin compound itself; or (b) all possible methods of treatment using rosuvastatin. Instead, at most, the '618 and '152 patents attempt to describe and claim only very narrow and limited "methods of treatment" with rosuvastatin.

Mylan develops and manufactures quality generic drugs. In November 2007, according to federal statutes and regulations governing generic drug competition, Mylan notified AstraZeneca that Mylan had filed an abbreviated new drug application ("ANDA") with the U.S. Food and Drug Administration ("FDA") seeking approval to market a generic form of rosuvastatin. A month later, in December 2007, AstraZeneca sued Mylan for infringement of a different patent (not asserted here) that was alleged to claim the rosuvastatin drug compound itself—U.S. Patent No. RE 37,314 ("the '314 patent").

The December 2007 suit on the '314 patent, along with AstraZeneca's related '314 patent suits against other generic drug manufacturers, were consolidated for discovery and trial in Delaware before the Honorable Joseph J. Farnan. Judge Farnan completed a bench trial in March 2010, and issued a decision in AstraZeneca's favor on June 29, 2010, holding that the

1

'314 patent claiming the rosuvastatin compound is both valid and enforceable. Based on that decision, on July 15, 2010, Judge Farnan ordered that Mylan cannot obtain FDA approval for its generic rosuvastatin product for at least six years (until July 8, 2016). The time for appeal of that decision ends on or about August 13, 2010.

Two months after Judge Farnan's rosuvastatin trial ended, but before post-trial briefing was completed, AstraZeneca filed this suit against Mylan alleging infringement of the '618 and '152 patents-in-suit—and similar suits against every other defendant in the '314 patent litigation—as a hedge against an adverse decision by Judge Farnan. If Judge Farnan had decided the previous case in Mylan's favor, Mylan and other generic drug companies could have begun selling their competing generic rosuvastatin products immediately. To further discourage and delay generic competition, AstraZeneca filed this second rosuvastatin suit against Mylan based on unsubstantiated allegations that Mylan *could possibly* infringe the '618 and '152 "method of treatment" patents *at some point in the future.*

This purely tactical (and baseless) suit, brought only after the '314 patent trial threatened AstraZeneca's CRESTOR® monopoly, is an abuse of process and a waste of the Court's time and resources. It was filed initially only as a hedge against an adverse decision by Judge Farnan, and remains pending *solely* as a hedge against the possible reversal of Judge Farnan's decision by the Federal Circuit. AstraZeneca's use of this tactic against Mylan is particularly egregious because:





In short, according to both the regulations governing generic drug competition and the FDA's "tentative approval"[1] of Mylan's rosuvastatin product, Mylan does not—and cannot—infringe either the '618 or '152 patents today, tomorrow, on July 8, 2016, or any time thereafter.

The Court, therefore, should dismiss AstraZeneca's Amended Complaint in its entirety for lack of subject matter jurisdiction and/or for failure to state a claim.

---

[1] A so-called "tentative approval" (or an approval with a delayed effective date) means that the product and labeling meet the requirements for approval, but the product cannot receive a final effective approval for marketing because of other reasons, such as a period of marketing exclusivity or patent protection. *See, e.g.*, 21 U.S.C. § 355(j)(5)(B)(iv)(II)(dd).

██████████████████████

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs filed their original Complaint on April 26, 2010, alleging infringement of the '618 and '152 patents under 35 U.S.C. § 271(e)(2). Before the time for response, Plaintiffs filed the Amended Complaint (D.I. 5) on April 30, 2010. By stipulation of the parties (D.I. 9), the Court extended the time for Mylan's response to the Amended Complaint to July 23, 2010.

## SUMMARY OF ARGUMENT

The primary basis for Mylan's motion to dismiss is clear and simple. Plaintiffs allege patent infringement solely under 35 U.S.C. § 271(e)(2). The Federal Circuit has found unequivocally that the jurisdictional basis for—and a necessary element of—a § 271(e)(2) infringement claim is a so-called "paragraph IV certification." Here, Plaintiffs do not allege, *and cannot allege*, that Mylan has submitted a "paragraph IV certification" for either of the patents-in-suit Based on these indisputable facts, Plaintiffs' Amended Complaint must be dismissed for lack of subject matter jurisdiction and/or failure to state a claim. Stated simply, no "paragraph IV certification" means no jurisdiction and no infringement.

---

[2] As explained in detail below, a "section viii" statement is an entirely different animal from a "paragraph IV certification." A "paragraph IV certification" means that a generic company asserts that the patents are invalid, unenforceable, or not infringed. In contrast, a "section viii statement" means that a generic company is not even seeking approval for the allegedly patented use; instead, the generic company has omitted or "carved out" any potentially infringing uses from the product labeling as required by the FDA.

## STATEMENT OF FACTS

The term "paragraph IV certification" refers to a statutory subsection within the so-called "Hatch-Waxman Act,"[3] which "governs the [FDA's] approval of new and generic drugs." *Janssen Pharmaceutica, N.V. v. Apotex, Inc.*, 540 F.3d 1353, 1355 (Fed. Cir. 2008). For the Court's convenience, we briefly outline the pertinent statutory and factual background below that requires dismissal of this suit.

### I.  New Drug Application (NDA).

Under Hatch-Waxman, brand-name companies (like AstraZeneca) seek approval of their proposed drug products (like CRESTOR®) by filing a "New Drug Application," commonly called an "NDA." An NDA generally should include information regarding the "safety and efficacy" of the drug "obtained from clinical trials," and must also "identify all patents" that could be asserted against a company like Mylan that may later seek to market a generic version of the product. *Janssen*, 540 F.3d at 1355. In particular, the brand company must submit information to the FDA on "any patent which claims the drug for which the applicant submitted the application or which claims a method of using such drug." 21 U.S.C. § 355(b)(1); *see also Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 601 F.3d 1359, 1360-61 (Fed. Cir. 2010).

#### A.  The "Orange Book."

The FDA then lists this patent information in its publication, "Approved Drug Products With Therapeutic Equivalence Evaluations," commonly known as the "Orange Book." *See, e.g.,* 21 U.S.C. § 355(b)(1); *Janssen*, 540 F.3d at 1355. To comply with this listing requirement, FDA regulations require a brand company to submit detailed forms identifying, among other things,

---

[3] The Hatch-Waxman Act is formally known as the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified at 21 U.S.C. §§ 355), as amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003).

what the patent purportedly claims, including any claimed methods of treatment. *Novo v. Caraco*, 601 F.3d at 1361; (*see also* Form 3542a and Form 3542 (Exhibits 1 and 2)).[4] If the brand company believes that its patent claims "one or more methods of using the NDA drug, Forms 3542a and 3542 require a description of each of those processes." *Novo v. Caraco*, 601 F.3d at 1361 (citing 21 C.F.R. § 314.53 (2009)). This description of the "method[] of using the NDA drug" is drafted by the brand company and provided to the FDA, and is "commonly known as the 'use code narrative.'" *Novo v. Caraco*, 601 F.3d at 1361. After the brand company submits these "use code narrative[s]" to the FDA, the "FDA assigns a unique number, known as a 'use code,' to each description," and then lists all of this information in the Orange Book. *Id.*

### B. CRESTOR® And The Patents-In-Suit.

For AstraZeneca's CRESTOR® product involved in this case, the Orange Book[5] identifies the '618 and '152 patents-in-suit, as well as corresponding use codes:

| Appl No | Prod No | Patent No | Patent Expiration | Drug Substance Claim | Drug Product Claim | Patent Use Code |
|---|---|---|---|---|---|---|
| N021366 | 002 | 6316460 | Aug 4, 2020 | | Y | |
| N021366 | 002 | 6316460*PED | Feb 4, 2021 | | | |
| N021366 | 002 | 6858618 | Dec 17, 2021 | | | U - 618 |
| N021366 | 002 | 6858618*PED | Jun 17, 2022 | | | |
| N021366 | 002 | 7030152 | Apr 2, 2018 | | | U - 1032 |
| N021366 | 002 | RE37314 | Jan 8, 2016 | Y | | |
| N021366 | 002 | RE37314*PED | Jul 8, 2016 | | | |

(Orange Book Listing, Part 1 (emphasis added) (Exhibit 3)). According to AstraZeneca, the '618 patent issued on February 22, 2005, and was published in the Orange Book "[a]s of August 1, 2007." (Amended Complaint (D.I. 5) ¶ 18.) The current Orange Book lists the use code

---

[4] The Declaration of Eric R. Hunt, filed concurrently herewith, authenticates and attaches the exhibits cited in this Brief.

[5] The Orange Book data provided in this Brief was taken from the online version at http://www.accessdata.fda.gov/scripts/cder/ob/default.cfm.