"U-618," and the following use code narrative drafted by AstraZeneca, in conjunction with the '618 patent:

> USE OF ROSUVASTATIN CALCIUM TO REDUCE ELEVATED TOTAL-C, LDL-C, APOB, NONHDL-C OR TG LEVELS; TO INCREASE HDL-C IN ADULT PATIENTS WITH PRIMARY HYPERLIPIDEMIA OR MIXED DYSLIPIDEMIA; AND TO SLOW THE PROGRESSION OF ATHERSCLEROSIS.

(Orange Book Listing, Part 2 (Exhibit 4)).

According to AstraZeneca, the '152 patent issued on April 18, 2006, and was published in the Orange Book "[a]s of March 8, 2010." (Amended Complaint (D.I. 5) ¶¶ 31-32.) The current Orange Book lists the use code "U-1032," and the following use code narrative drafted by AstraZeneca, in conjunction with the '152 patent:

> USE OF ROSUVASTATIN CALCIUM FOR THE PRIMARY PREVENTION OF CARDIOVASCULAR DISEASE IN INDIVIDUALS WITHOUT CLINICALLY EVIDENT CORONARY HEART DISEASE BUT WITH INCREASED RISK FACTORS.

(Orange Book Listing, Part 3 (Exhibit 5)).

As explained below, the FDA relied on AstraZeneca's use code narratives, which purportedly define the "scope of the patented method," when the FDA evaluated and approved Mylan's "carve-out" of the "methods of use" that AstraZeneca represented to the FDA are purportedly covered by the '618 and '152 patents. *See Novo v. Caraco*, 601 F.3d at 1361-62 (explaining the FDA's reliance on the brand company's use code narratives in the approval of the generic company's "carve-out" product labeling).

## II.    ANDAs And "Paragraph IV Certifications."

The Hatch-Waxman Act also created an expedited approval process for lower-priced generic drugs. As the Federal Circuit aptly explained:

7

> To encourage the development of generic versions of listed drugs,[6] the Act created an *expedited approval process* known as an *Abbreviated New Drug Application* (ANDA). 21 U.S.C. § 355(j). Generic drug companies are not required to conduct their own independent clinical trials to prove safety and efficacy, but can instead rely on the research of the pioneer pharmaceutical companies. . . . *The ANDA applicant must also include a certification to each patent listed in the Orange Book* covering the listed drug that either (I) no patent information has been filed with the FDA; (II) the patent has expired; (III) the patent will expire on a particular date and approval of the ANDA should be deferred until expiration; or (IV) in the opinion of the ANDA applicant, the patent is invalid or will not be infringed by the manufacture, use, or sale of the generic drug. . . . *These options are respectively referred to as Paragraph I, II, III and IV Certifications.*

*Janssen*, 540 F.3d at 1355-56 (emphasis added). These certification "options" are numbered according to statutory subsections in the Act. For example, a "Paragraph IV Certification" corresponds to subpart (IV) of this part of the Act:

(vii) a certification, in the opinion of the applicant and to the best of his knowledge, with respect to each patent which claims the listed drug referred to in clause (i) or which claims a use for such listed drug for which the applicant is seeking approval under this subsection and for which information is required to be filed under subsection (b) or (c) of this section—

(I) that such patent information has not been filed,

(II) that such patent has expired,

(III) of the date on which such patent will expire, or

(IV) that such patent is invalid or will not be infringed by the manufacture, use, or sale of the new drug for which the application is submitted; and

21 U.S.C. § 355(j)(2)(A)(vii) (emphasis added).

### A. "Section viii Statements."

"Significantly, however, 'the four types of certifications enumerated [above] are *not the only mechanisms* by which an ANDA applicant can address a potentially relevant patent.'"

---

[6] A "listed drug" is a drug like rosuvastatin which has been approved by the FDA. *Janssen*, 540 F.3d at 1355 (citing 21 U.S.C. § 355(j)(2)(A)(i)).

8

████████████████████

*Novo Nordisk Inc. v. Mylan Pharms. Inc.*, No. 09-2445, 2010 WL 1372437, at *2 (D.N.J. Mar. 31, 2010) (emphasis added). "If a generic manufacturer wishes to seek FDA approval for a *use not covered by a method-of-use patent* for a listed drug, it *must* make a 'section viii statement'"[7] and omit or "carve-out" from the product labeling any uses purportedly covered by that patent. *Novo v. Caraco*, 601 F.3d at 1361 (emphasis added). Specifically, the statute provides for a "section viii" statement as follows:

> An [ANDA] shall contain –
>
> (viii) if with respect to the listed drug . . . information was filed . . . for a method of use patent which *does not claim a use for which the applicant is seeking approval* under this subsection, a statement that the method of use patent does not claim such a use.

21 U.S.C. § 355(j)(2)(A) (emphasis added).

When approving a "section viii statement" and labeling carve-out, the FDA relies on the brand company's use code narrative listed in the Orange Book:

> Along with the section viii statement, the generic manufacturer *must* submit a proposed label to the FDA that *does not contain* the patented method of using the listed drug. When considering approval of these requests for a use not covered by a patent, the FDA *relies* on the applicable patent's use code narrative to *determine the scope of the patented method.*

*Novo v. Caraco*, 601 F.3d at 1361 (citing *Applications for FDA Approval to Market a New Drug*, 68 Fed. Reg. 36676, 36682 (June 18, 2003)) (emphasis added). The "FDA *approves* the section viii statement *only* where there is *no overlap* between the proposed carve-out label[8] submitted by

---

[7] Here again, the common name "section viii statement" refers to the corresponding statutory subpart in the statute. *See* 21 U.S.C. § 355(j)(2)(A)(viii) (emphasis added).

[8] In this context, "proposed carve-out label" refers to the prescribing information that Mylan is required by law to include in its ANDA submission to the FDA. A copy of Mylan's approved prescribing information is attached to the Hunt Declaration as Exhibit 13.

9

the generic manufacturer and the use code narrative submitted by the pioneering manufacturer."

*Id.* at 1361-62 (emphasis added).[9]

### B. A "Paragraph IV Certification" Is An Act Of Infringement That "Creates" A Cause Of Action; A "Section viii Statement" Is <u>Not</u>.

As noted above, a "section viii statement" is very different from a "paragraph IV certification." Those differences are critical for jurisdictional purposes. As the Federal Circuit has explained, the submission of a paragraph IV certification is the requisite act of patent infringement that actually gives rise to, or creates, an action for patent infringement:

> When an ANDA applicant *certifies* that the patent is *invalid or will not be infringed* (a so-called "*paragraph IV certification*"), it must provide notice to the patentee and the holder of the approved NDA that it has submitted such a certification . . . [and] must supply a detailed statement of the factual and legal basis for its opinion of invalidity or noninfringement. . . .
>
> Once the patent holder receives notice that an ANDA applicant has filed a paragraph IV certification with respect to an approved drug, the patent holder has 45 days within which to file a patent infringement action. *To facilitate early resolution of the question whether the generic drug would infringe a pertinent patent, the Hatch-Waxman Act treats the act of filing a paragraph IV certification as an act of patent infringement.* 35 U.S.C. § 271(e)(2)(A).

*Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1338-39 (Fed. Cir. 2003) (citation omitted) (emphasis added); *see also Janssen*, 540 F.3d at 1356 ("[T]he [Hatch-Waxman] Act provides that the filing of a Paragraph IV certification is an act of patent infringement. 35 U.S.C. § 271(e)(2)(A)."); *Merck & Co. v. Apotex, Inc.*, 292 Fed. App'x 38, 40 (Fed. Cir. 2008) (same). *Stated differently, a paragraph IV certification "creates" a cause of action under 35 U.S.C. § 271(e)(2).* Abbott Labs. v. Baxter Pharm. Prods., Inc., 471 F.3d 1363, 1365 (Fed. Cir. 2006) (explaining that

---

[9] The FDA itself has described the "section viii statement" regulatory process at length, noting that "[i]n determining whether an ANDA applicant can 'carve out' the method of use, rather than certify to the listed patent, [the FDA] will rely on the description of the approved use provided by the NDA holder or patent owner in the patent declaration and listed in the Orange Book." 68 Fed. Reg. at 36682.

"paragraph IV certification . . . _created the cause of action giving rise to this suit_ under 35 U.S.C. § 271(e)(2)." (emphasis added)).

In contrast, a "section viii statement" means that a generic company is not even seeking approval for the use allegedly covered by the patent (*i.e.*, the patent does not apply at all to the use for which approval is sought); instead, the generic company has "carved out" any potentially infringing uses from the product labeling as required by the FDA. *See Apotex, Inc. v. FDA*, 393 F.3d 210, 214 (D.C. Cir. 2004) ("[A]pplicants use paragraph IV certifications to challenge the validity of applicable patents, whereas they submit section viii statements to assert that patents do not apply."). As the Honorable Freda L. Wolfson explained in *Novo v. Mylan*:

> Rather than submit a Paragraph IV Certification, an ANDA applicant may instead represent that it is *not seeking approval for the patented method of use*. In what is commonly referred to as a "section viii statement," the ANDA applicant asserts that the "patent is inapplicable to the indication for which the drug product will be marketed."

*Novo v. Mylan*, 2010 WL 1372437, at *2 (citation omitted) (emphasis added); *see also Novo v. Caraco*, 601 F.3d at 1365 ("Section viii addresses scenarios where a patent claims at least one, but not all, approved methods of using a drug."). Judge Wolfson also relied on the D.C. Circuit's thorough explanation of these critical differences:

> A section viii statement indicates that a patent poses no bar to approval of an ANDA because the applicant seeks to market the drug for a use *other than one encompassed by the patent*. For example, if a brand-name manufacturer's patent covers a drug's use for treating depression, and the ANDA applicant seeks approval to use the drug to treat any other condition, then a section viii statement would be appropriate. Thus, whereas applicants use paragraph IV certifications to challenge the validity of admittedly applicable patents, *they use section viii statements to assert that patents do not apply.*

*Novo v. Mylan*, 2010 WL 1372437, at *2 (citation omitted) (quoting *Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 880 (D.C. Cir. 2004)).[10]

The consequence of these differences is logical and indeed dispositive here: "An applicant proceeding by means of a section viii statement need not inform the patent owner of its [ANDA], and *does not face an infringement action under 35 U.S.C. § 271(e)(2)(A) . . . .*"[11] *Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191, 195 (D.D.C. 2002) (citing 35 U.S.C. § 271(e)(2)(A); *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 676 (1990); *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997)) (emphasis added). This is consistent with the plain language of § 271(e)(2):

> It shall be an act of infringement to submit--
>
> (A) an [ANDA] . . . for a drug claimed in a patent or the use of which is claimed in a patent . . . , *if the purpose of such submission is to obtain approval* . . . to engage in the commercial manufacture, use, or sale *of a drug* . . . claimed in a patent or *the use of which is claimed in a patent* before the expiration of such patent.

35 U.S.C. § 271(e)(2) (emphasis added). A section viii statement affirmatively represents the exact opposite—that the applicant does *not* seek approval to "manufacture, use, or

---

[10] In the background portion of his dissent to the recent *Novo v. Caraco* Federal Circuit decision, Judge Dyk described the purpose of a section viii statement similarly: "Recognizing that some NDAs would cover both uses covered by a patent and uses not covered by a patent, Congress enacted 'section viii,' which allows the ANDA applicant to limit its application to unpatented uses, and to secure approval for those unpatented uses." 601 F.3d at 1369-70 (Dyk, J., dissenting).

[11] AstraZeneca may argue that it should be able to challenge the adequacy of the FDA's approval of Mylan's section viii statements through litigation. To the contrary, the Federal Circuit recently confirmed that a brand company can challenge claimed overlap with its use code narrative only where the use code narrative covers "all uses of a pharmaceutical" and the generic company has provided a paragraph IV certification. *See Novo v. Caraco*, 601 F.3d at 1365 ("This court recognizes that a broad use code covering *all uses* of a pharmaceutical could require generic manufacturers to prove specifically that their use will not overlap and infringe the patented use. This proof, under Hatch-Waxman procedures, *will* take the form of a *Paragraph IV lawsuit*." (emphasis added)).

12